IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| **COREY LYNN WILCOX** § § | |
| § | **CIVIL ACTION NO. 6:22-CV-00388-JCB** |
| **Plaintiff,** § § | |
| **v.** § § | |
| **DAVID MCEVOY,** § § § | |
| **Defendant.** § | |

**REPORT AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE**

Before the court is Defendant David McEvoy's ("Defendant") motion for summary judgment. (Doc. No. 18.) Plaintiff Corey Wilcox has not filed a response. For the reasons stated herein, the court **RECOMMENDS** that Defendant's motion for summary judgment (Doc. No. 18) be **GRANTED**.

**BACKGROUND**

Plaintiff filed the instant action on September 20, 2022, proceeding pro se and *in forma pauperis* (IFP), alleging violations of 42 U.S.C. § 1983 against Defendant David McEvoy. (Doc. No. 1.) The case was set on a schedule, after which Defendant McEvoy filed an answer (Doc. No. 12), and thereafter filed the instant motion for summary judgment (Doc. No. 18.)

**I.    Plaintiff's Complaint**

Plaintiff alleges that while he was in his jail cell at Gregg County Jail, he asked for the kiosk from a "Mrs. Anderson," and when she brought it to him, Defendant McEvoy came to his cell to retaliate against him because of a case he had filed in federal court that resulted in the firing

of Officer Jeffery Buell. (Doc. No. 1, at 4.) Specifically, Plaintiff alleges that Defendant McEvoy struck him in the arm after opening his food slot while Plaintiff was reaching for the kiosk. *Id.* Plaintiff alleges that Defendant McEvoy then leaned in and told him "I'm not [B]uell." *Id.* at 5. Plaintiff states that he told Defendant McEvoy that he had violated his Eighth and Fourteenth Amendment rights and that Defendant McEvoy turned and waved at the camera. *Id.* Plaintiff alleges that Defendant McEvoy then tried to close his arm in the food slot tray and take the kiosk away from him. *Id.* Plaintiff states that Mrs. Anderson witnessed the entire event and commented that Defendant McEvoy's actions were uncalled for. *Id.* Plaintiff alleges that this was also mental and emotional abuse, for which he filed grievances, but that Defendant McEvoy was still allowed to work in the area where he was being housed. *Id.*

Plaintiff attached his written grievances regarding the alleged incident. (Doc. No. 1-1.) Plaintiff requests relief in form of compensatory damages of $50,000 for pain and suffering and emotional abuse. *Id.* at 4.

## II.     Defendant's Answer

Defendant McEvoy filed an answer on November 4, 2022, admitting that Plaintiff was confined at the Gregg County Jail when he filed his complaint, but denies all other claims and requested relief. (Doc. No. 12, at ¶¶ 1–8.) Defendant raises the affirmative defense of qualified immunity, sovereign immunity, failure to exhaust, failure to state a claim, and asserts that injuries sustained by Plaintiff, if any, were solely caused by Plaintiff's own actions. *Id.* at 2–3.

## III.    Defendant's Summary Judgment Evidence

In support of his motion for summary judgment, Defendant submits his own declaration (Doc. No. 18-1), the declaration of Myra Anderson (Doc. No. 18-2), the declaration of Jeff Callaway (Doc. No. 18-3), and a video of the use of force incident (Doc. No. 18-4).

### a. Defendant McEvoy's Declaration (Doc. No. 18-1)

In his declaration, Defendant McEvoy states that he was employed as a jailer at the Gregg County Sheriff's Office – Jail Division on August 25, 2022, the date of the alleged incident. (Doc. No. 18-1, at 1.) Defendant McEvoy states that he was working a 6:00 P.M. to 6:00 A.M shift when at approximately 3:30 A.M. he noticed that the door to Separation Cell 2, where Plaintiff was housed, showed to be not secured. *Id.* Defendant McEvoy states that he and Corporal Rimlinger went to check on the door and that the door was called to be opened, it was checked, and shut, and then showed as secure. *Id.* Defendant McEvoy maintains that prior to this Plaintiff had been hitting the door and yelling for staff to bring him the kiosk, and that because staff was serving breakfast at that time, he was required to wait. *Id.* Defendant states that the door showed not to be secure two more times between 3:30 A.M. and 5:00 A.M. *Id.*

At approximately 5:10 A.M. Defendant McEvoy asked Jailer Myra Anderson to accompany him to Plaintiff's cell to provide him access to the kiosk, noting that he wanted a second jailer present due to the cell door issues. *Id.* Defendant McEvoy states that when he opened the food slot and Jailer Anderson started to approach with the kiosk, Plaintiff stuck his hand out of the food slot. *Id*. Defendant states that he asked Plaintiff to put his hand back in the cell, but Plaintiff then reached out his arm. *Id.* Defendant McEvoy states that Plaintiff's hand was approximately eight inches from his groin area, and so he instinctively batted Plaintiff's hand away. *Id.* at 2.

Defendant McEvoy maintains that Plaintiff continued to argue and refused to put his arm back in the cell, despite being ordered to do so at least three times. *Id.* Defendant McEvoy states that he then told Plaintiff he was going to close the food slot and began lifting the slot to try and push Plaintiff's arm back into the cell. *Id.* Defendant maintains that the slot was lifted for a couple of seconds to attempt to induce Plaintiff to put his arm back in the cell, but Plaintiff then grabbed

3

the windowsill so that the food slot could not be shut. *Id.* Defendant maintains that his attempt to close the food slot was not done forcefully, as he continued to try to reason with Plaintiff, and notes that the food slot must remain closed for safety reasons. *Id.* Defendant states that eventually Corporal Rimlinger and another officer came to assist with the situation. *Id.*

Defendant McEvoy maintains that Plaintiff was not injured as a result of the minimal contact by Defendant and that he never complained that he was injured. *Id.* Defendant maintains that his actions were taken in good faith and were reasonable. *Id.*

### b.  Declaration of Myra Anderson (Doc. No. 18-2)

Defendant also submits the declaration of Myra Anderson who states that she was working as a jailer at the Gregg County Jail on August 25, 2022, the date of the alleged incident. (Doc. No. 18-2, at 1.) Ms. Anderson states that the cell door where Plaintiff was housed alerted as not secure and that she observed Plaintiff sitting on the floor by the door asking for the kiosk. *Id.* Ms. Anderson states that Defendant McEvoy asked her to get the kiosk for Plaintiff, that she went to retrieve it, and that when she returned, Defendant McEvoy opened the food slot and Plaintiff stuck his arm out. *Id.* Ms. Anderson states that Defendant McEvoy told Plaintiff to put his arm back in the cell, but Plaintiff reached his arm out instead and Defendant McEvoy swatted his hand away. *Id.* Ms. Anderson said she unplugged the kiosk and took it away and when she returned Plaintiff was arguing and refusing to put his arm back inside the cell and Defendant McEvoy ordered him to remove his arm from the food slot several times to no avail. *Id.*

Ms. Anderson states that she heard Defendant McEvoy tell Plaintiff that he was going to close the food slot and observed him lift the slot for a couple of seconds in an attempt to push Plaintiff's arm back in. *Id.* at 1–2. Ms. Anderson states that Plaintiff resisted and grabbed the ledge of the windowsill and continued to argue and refuse orders. *Id.* at 2. Ms. Anderson states that

eventually another officer was contacted to come handle the situation and she returned to her duties. *Id.* Ms. Anderson states that it is important to keep the food slots closed for the security of the jail and that it is her opinion that Plaintiff was never injured as a result of the incident. *Id.*

### c. Declaration of Jeff Callaway (Doc. No. 18-3)

Defendant submits the declaration of Jeff Callaway, Chief Deputy and Jail Administrator with the Gregg County Sheriff's Office. (Doc. No. 18-3.) Mr. Callaway notes that he is the custodian of records for the Gregg County Jail and that Exhibit D is a true and correct copy of the recording of the incident taken from inside the Gregg County South Jail on Augst 25, 2022. *Id.* at 1.

Mr. Callaway states that he is familiar with Plaintiff who was housed in Separation Cell 2 due to prior disciplinary issues. *Id.* Mr. Callaway further states that he is aware Plaintiff is complaining of an incident that involved Defendant McEvoy. *Id.* Mr. Callaway states that he reviewed the video and that it is his opinion that the force used by Defendant McEvoy was reasonable and justified because Plaintiff was reaching his hand out through the food slot towards Defendant McEvoy and refusing to withdraw his arm despite many orders to do so and resisting efforts to put his arm back inside. *Id.* at 1–2. Mr. Callaway states that a small bruise was noticed on the underside of Plaintiff's upper right arm, but that there was no record that Plaintiff sought medical attention for his arm. *Id.* at 2. Mr. Callaway states that "[f]or security and safety reasons, the food slot is required to be closed unless in use" because "[i]f left open, inmates can pass contraband in the hallway, grab persons passing their cell, or throw food, beverages, human waste or dangerous objects at officers passing by." *Id.* at 2. Mr. Callaway states that command staff did counsel with Defendant McEvoy to address other ways to handle the situation in the future, but that no disciplinary action was taken. *Id.*

### d. Use of Force Video (Doc. No. 18-4)

Defendant further submitted the authenticated video recording of the incident that occurred on August 25, 2022 at the Gregg County Jail involving Plaintiff and Defendant McEvoy. (Doc. No. 18-4.) The video footage shows that on August 25, 2022 at approximately 5:11 A.M. Defendant McEvoy, Ms. Anderson, and another unknown individual approached Plaintiff's cell "SEP 2" with the kiosk. At 5:11:10, Defendant McEvoy opened the food slot to Plaintiff's cell and at 5:11:15, Plaintiff stuck his right arm out of the food slot, up to his elbow. Thereafter, Defendant McEvoy said something to Plaintiff through the slot and Plaintiff reached his right arm out further towards Defendant McEvoy. As Plaintiff's hand was reaching towards Defendant McEvoy, appearing to be mere inches from Defendant McEvoy's groin area, Defendant McEvoy swatted away Plaintiff's hand with the back of his right hand. Defendant McEvoy then continued to talk to Plaintiff through the food slot opening and the kiosk was taken away by Ms. Anderson. Defendant McEvoy appears to try to reason with Plaintiff for approximately the next minute while Plaintiff's arm remains hanging out of the food slot. At 5:12:22, Defendant McEvoy lifted the slot in an attempt to push Plaintiff's arm back into the cell. Defendant McEvoy used his left hand to attempt to lift the food slot and his right hand to position Plaintiff's arm back in through the food slot. Approximately five seconds later, Defendant McEvoy released the food slot and Plaintiff reached up with his arm to grab the ledge of the windowsill.

For the next two minutes, Defendant McEvoy appears to continue to try to reason with Plaintiff, while Plaintiff's arm remains outside of the food slot, at times with his other hand coming out as well. At no point during this time does Defendant McEvoy come into physical contact with Plaintiff or the food slot. At 5:14:13, Defendant McEvoy and Ms. Anderson leave the camera's view. Plaintiff's arm remains hanging out of the open food slot. At 5:14:44 another jailer shows

up, presumably Corporal Rimlinger, to assess the situation. After discussion with the jailer, Plaintiff voluntarily puts his hand back into the cell at approximately 5:15:50 and Plaintiff is given access to the kiosk. Defendant McEvoy does not show up again on camera at any point after he initially left the cell area at 5:14:13.

### IV.   Plaintiff's Summary Judgment Evidence

Although Plaintiff was granted an extension to submit a response to Defendant's summary judgment motion until June 12, 2023 (Doc. No. 24), to date, Plaintiff has not filed any response to Defendant's motion for summary judgment. Local Rule 7(e) provides that "[a] party opposing a motion has fourteen days (twenty-one days for summary judgment motions) from the date the motion was served in which to file a response and any supporting documents, after which the court will consider the submitted motion for decision." L.R.-CV 7(e). Here, Plaintiff waited nearly three months from the filing of Defendant's motion to request an extension of time to file a response. (Doc. No. 22.) Plaintiff was granted an extension of time to respond up to June 12, 2013. (Doc. No. 24.) More than forty-five days have passed since the extended due date and Plaintiff still has not filed a response. Local Rule 7(d) provides that "[a] party's failure to oppose a motion in the manner prescribed herein creates a presumption that the party does not controvert the facts set out by movant and has no evidence to offer in opposition to the motion." L.R. CV-7(d). Accordingly, the court presumes Plaintiff does not controvert the evidence set forth by Defendant and has no evidence to offer in opposition.

### LEGAL STANDARD

A motion for summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56; *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). The Supreme Court has interpreted the plain language of Rule 56 as mandating "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting *Celotex*, 477 U.S. at 323–25). A fact is material if it might affect the outcome of the suit under the governing law. *Merritt-Campbell, Inc. v. RxP Prods., Inc.*, 164 F.3d 957, 961 (5th Cir. 1999). Issues of material fact are "genuine" only if they require resolution by a trier of fact and if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Merritt-Campbell, Inc.*, 164 F.3d at 961. If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Little*, 37 F.3d at 1075.

If the movant meets this burden, Rule 56 requires the opposing party to go beyond the pleadings and to show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. *EEOC v. Texas Instruments, Inc.*, 100 F.3d 1173, 1180 (5th Cir. 1996); *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1046–47 (5th Cir. 1996). The nonmovant's burden may not be satisfied by argument, conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a mere scintilla of evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 585

(1986); *Wallace*, 80 F.3d at 1047; *Little*, 37 F.3d at 1075.

When ruling on a motion for summary judgment, the court is required to view all justifiable inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970); *Merritt-Campbell, Inc.*, 164 F.3d at 961. However, the court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *as modified*, 70 F.3d 26 (5th Cir. 1995). Unless there is sufficient evidence for a reasonable jury to return a verdict in the opposing party's favor, there is no genuine issue for trial, and summary judgment must be granted. *Celotex*, 477 U.S. at 322–23; *Anderson*, 477 U.S. at 249–51; *Texas Instruments*, 100 F.3d at 1179.

## DISCUSSION

Defendant McEvoy moves for summary judgment on the defense of qualified immunity because Defendant McEvoy argues that Plaintiff has failed to identify any action on his part that violated the constitution as his conduct was objectively reasonable. (Doc. No. 18.)

### I.  Qualified Immunity

The doctrine of "qualified immunity" protects government officials from "liability for civil damages insofar as their conduct does not violate 'clearly established' statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 800 (1982). The qualified immunity inquiry determines whether a plaintiff has shown "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al–Kidd,* 563 U.S. 731, 735 (2011) (citing *Harlow*, 457 U.S. at 818). The court has "discretion in deciding which of the two prongs of the

qualified immunity analysis should be addressed first." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

An additional consideration exists in the analysis of a qualified immunity defense on a motion for summary judgment. Once a defendant invokes qualified immunity, "the burden shifts to the plaintiff to demonstrate the inapplicability of the defense." *McCreary v. Richardson*, 738 F.3d 651, 655 (5th Cir. 2013) (internal citation omitted). Thus, although the court "draws all factual inferences in favor of the non-movant, . . . once the issue of qualified immunity is raised, the non-movant (*i.e.* the plaintiff in this case) bears the burden of rebutting the defense." *See Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 380 (5th Cir. 2005) ("[w]e do not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs."); *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) ("the plaintiff bears the burden of negating qualified immunity…"). "The plaintiff can defeat summary judgment by rebutting the qualified immunity defense as a matter of law or by raising a genuine fact dispute that is material to the issue of immunity." *Johnson v. Eggebrecht*, No. 9:14-CV-144, 2015 WL 9703791, at *4 (E.D. Tex. Dec. 28, 2015), *report and recommendation adopted*, No. 9:14-CV-144, 2016 WL 165091 (E.D. Tex. Jan. 14, 2016) (citing *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015)). "[S]ummary judgment should be denied if the plaintiff's version of the facts would permit a finding that the official is not entitled to qualified immunity." *Id.* (citing *Lytle v. Bexar Cnty.*, 560 F.3d 404, 418 (5th Cir. 2009)).

### a. Alleged Constitutional Violations

As discussed above, Plaintiff alleges that Defendant McEvoy violated the Eighth and Fourteenth Amendments by subjecting him to excessive use of force. (Doc. No. 1.) Notably, however, at the time of the incident, Plaintiff was a pretrial detainee in the Gregg County Jail. The

incident occurred on August 25, 2022, and Plaintiff was not convicted and sentenced until October 21, 2022 for unlawful possession of a firearm by a felon. Therefore, Plaintiff's claim for excessive use of force is properly presented only as an alleged violation of the Fourteenth Amendment and the Eighth Amendment does not apply.[1]

### i. Excessive Use of Force

Defendant McEvoy moves for summary judgment on qualified immunity as to Plaintiff's excessive use of force claim. (Doc. No. 18.) Specifically, Defendant McEvoy argues that there was a reasonable relationship between the need for force and the force used and that Plaintiff was not injured during the incident. (Doc. No. 18, at 9.)

The Supreme Court has held that the appropriate standard for a pretrial detainee's excessive force claim is solely an objective one. *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). "[A] pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.* at 396–97. The court considers the following non-exclusive factors regarding the reasonableness of the use of force:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.* at 397; *Welsh v. Correct Care Recovery Sols.*, 845 F. App'x 311, 317 (5th Cir. 2021), *cert. denied*, 211 L. Ed. 2d 258, 142 S. Ct. 438 (2021). In determining objective reasonableness, "a court must also account for the 'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and

---

[1] The Eighth Amendment protects convicted felons, whereas pretrial detainees are protected by the Fourteenth Amendment Due Process Clause "from the use of excessive force that amounts to punishment." *Graham v. Connor*, 490 U.S. 386, 109 S. Ct. 1865, 1871 n.10 (1989) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)).

discipline and to maintain institutional security.'" *Id.* (alterations in original) (quoting *Bell*, 441 U.S. at 540 (1979)).

    Here, the authenticated camera footage shows that at approximately 5:11 A.M., Plaintiff stuck his arm out of the food slot when it was opened by Defendant McEvoy to give him access to the kiosk. Plaintiff then reached for Defendant McEvoy with his right arm and Defendant McEvoy briefly swatted Plaintiff's hand away with the back of his right hand when Plaintiff's hand was only a few inches from Defendant's groin area. Plaintiff continued to keep his right arm hanging out of the food slot. Though the camera footage lacks audio, Defendant McEvoy appears to try to reason with Plaintiff for approximately the next minute while Plaintiff's arm remains hanging out of the food slot. Indeed, both Defendant McEvoy and Ms. Anderson state that Defendant McEvoy gave verbal warnings and instructions to Plaintiff to place his arm back in the cell both before and after Defendant McEvoy swatted away Plaintiff's hand. (Doc. Nos. 18-1, 18-2.) The video footage shows that Defendant McEvoy talked with Plaintiff for approximately one minute after he swatted his hand away while Plaintiff's hand remained outside of the food slot the entire time. Defendant McEvoy did not come into contact with Plaintiff again until 5:12:22, when he lifted the slot in an attempt to push Plaintiff's arm back into the cell. Defendant McEvoy used his left hand to attempt to lift the food slot and his right hand to position Plaintiff's arm back in through the food slot. Approximately five seconds later, Defendant McEvoy released the food slot and Plaintiff reached up with his arm to grab the windowsill, resisting Defendant McEvoy's efforts to place Plaintiff's arm back inside his cell.

    Based on these circumstances, no reasonable fact finder could conclude that the use of force used by Defendant McEvoy was objectively unreasonable. Plaintiff refused to place his hand back into the cell after first being verbally instructed to do so. Defendant McEvoy used minimal

force in swatting away Plaintiff's hand only when it was mere inches from his groin area, likely an instinctive defense mechanism. Plaintiff's arm remained outside of the food slot for the next minute despite additional verbal orders to place his arm back inside his cell. Defendant McEvoy, Ms. Anderson, and Mr. Callaway all emphasize the importance of keeping the food slot closed for security and safety reasons because if left open, inmates can pass contraband in the hallway, grab persons passing their cell, or throw food, beverages, human waste, or dangerous objects at officers passing by. (Doc. Nos. 18-3, 18-2, 18-1.) As having the food slot open posed a security risk to the jail, Defendant McEvoy attempted to push Plaintiff's arm back into the slot only after he had been given verbal instruction to do so and Plaintiff refused to comply. *See Welsh*, 845 F. App'x at 318 (affirming decision finding no viable excessive use of force claim existed where pretrial detainee actively resisted orders to remove his hands so the food slot could be closed). Plaintiff never placed his arm back in the food slot at any point while Defendant McEvoy was present despite numerous orders to do so. Defendant McEvoy's attempt to close the slot lasted approximately five seconds—a very brief period of time—and was worsened by Plaintiff's own resistance to the action in grabbing the windowsill to force the slot to remain open. Defendant McEvoy immediately released the food slot upon meeting Plaintiff's resistance and did not come into physical contact with Plaintiff again, but continued to try and talk to him until another jailer was called to cell.

Moreover, Plaintiff does not allege any injury resulting from the incident (Doc. No. 1), and the declaration of Jeff Callaway, Chief Deputy and Jail Administrator with the Gregg County Sheriff's Office, states only that a small bruise was noticed on the underside of Plaintiff's upper right arm, but that there was no record that Plaintiff sought medical attention for his arm. (Doc. No. 18-3, at 2.) As such, Plaintiff has not shown any injury that is more than de minimis. *See Welsh*, 845 F. App'x at 318 (affirming finding that bruising and swelling that pretrial detainee

13

suffered when a food slot was kicked shut on him was no more than a de minimis injury). Moreover, as discussed, the uncontroverted evidence shows that Plaintiff voluntarily left his arm hanging out of the food slot for a prolonged period of time and resisted by grabbing onto the ledge of the windowsill. *See Collier v. Montgomery*, 569 F.3d 214, 219 (5th Cir. 2009) (holding that use of force and the resulting bruises were not excessive where arrestee resisted).

Given the uncontested facts presented, Plaintiff has failed to meet his burden to show that there is a genuine issue of material fact as to the reasonableness of Defendant McEvoy's use of force. For these reasons, the court **RECOMMENDS** that Defendant's motion for summary judgment (Doc. No. 18) be granted as to qualified immunity on Plaintiff's excessive use of force claim.

## CONCLUSION

For the reasons stated herein, the court **RECOMMENDS** that Defendant's motion for summary judgment (Doc. No. 18) be **GRANTED** on the grounds of qualified immunity and that Plaintiff's claim for excessive use of force against Defendant McEvoy be dismissed with prejudice.

Within fourteen (14) days after receipt of the Magistrate Judge's report and recommendation, any party may serve and file written objections to the findings and recommendations contained in the report and recommendation. A party's failure to file written objections to the findings, conclusions and recommendations contained in this report and recommendation within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79

F.3d 1415, 1430 (5th Cir. 1996) (*en banc*), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**So ORDERED and SIGNED this 1st day of August, 2023.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE